UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NESTOR PEREZ,

                    Plaintiff,

-vs-                                Case No.  6:10-cv-410-Orl-31GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

Nestor Perez (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits. Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed because the Administrative Law Judge (the "ALJ") failed to: 1) consider and properly weigh the opinions of Claimant's treating and examining physicians; 2) inquire of the Vocational Expert's (the "VE") as to whether the VE's testimony conflicted with the Dictionary of Occupational Titles (the "DOT") as required by Social Security Ruling ("SSR") 00-4p; 3) consider the side-effects of Claimant's medications; and 4) properly evaluate Claimant's credibility.  Doc. No. 12 at 1-19.  Claimant requests reversal for an award of benefits or, in the alternative, for remand for further consideration.   Doc. No. 12 at 19-20.   For the reasons set forth below, it is **RECOMMENDED** that the final decision of the Commissioner be **REVERSED and REMANDED** pursuant to sentence four of Section 405(g) because the ALJ failed to state with

particularity the weight given to all of the opinions of Claimant's treating and examining physicians, and failed to provide good cause for rejecting the opinions of Dr. Greenberg, one of Claimant's treating physicians.

## I.    BACKGROUND.

Claimant was born on March 14, 1968, and was approximately forty-one (41) years old at the time of the hearings before the ALJ.  R. 28, 46, 139.  On August 10, 2006, Claimant filed an application for benefits alleging an onset of disability as of August 19, 2006.  R. 49, 139, 150, 160-61.[1]  Claimant has a high school education and past relevant work experience as corrections officer, security guard, merchant patroller, bread maker, and a merchandise stocker.  R. 39, 52-55, 166, 170.  Claimant alleges disability due to a back injury he sustained while working as a merchandise stocker on December 20, 2005.  R. 165.  On that day, Claimant fell while climbing off a ladder, injuring his back.  R. 296.  Claimant's application was denied initially and upon reconsideration.  R. 69-70, 73-74, 77-79, 86-90.  On May 1, 2007, Claimant requested a hearing before an ALJ.  R. 91

On February 11, 2009 and April 16, 2009, hearings were held before ALJ Robert D. Marcinkowski.  R. 28-68.  Claimant and VE Susanna Roche were the only persons to testify.  R. 26-68.  Claimant testified that he can sit for no more than twenty to twenty-five minutes, stand for fifteen minutes, walk only with a cane for short distances, and can lift and carry five to ten pounds.  R. 61, 65-66.  On June 17, 2009, the ALJ issued a decision finding the Claimant not disabled.  R. 17-27.   On January 11, 2010, the Appeals Council denied Claimant's request for review of the ALJ's decision.   R. 1-4.   On March 17, 2010, Claimant appealed the

---

[1] Originally, Claimant alleged an onset date of December 20, 2005, but later amended the onset date to August 19, 2006.  *See* R. 139, 150, 160-61.

Commissioner's final decision in this Court.  Doc. No. 1.

## II.    MEDICAL AND OPINION EVIDENCE.

The dispositive issue in this case is the way the ALJ handled the opinion evidence from Claimant's treating, examining, and non examining physicians.  The Court focuses its summary of the medical record below to those medical opinions and the diagnostic testing, such as magnetic resonance imaging ("MRI"), incident thereto.

1.  Florida Hospital – December 21, 2005 through April 23, 2009.

Claimant presented to the emergency room at Florida Hospital on the day after his accident and continued to periodically present to the emergency room throughout the relevant period.  R. 244-52, 258-67, 275-98, 343-52, 356-58, 388-91, 407-11, 412-14, 415-22.   On December 21, 2005, Claimant presented to the emergency room complaining of constant back, hip and left knee pain of 8 on a scale of 1 to 10, with 10 being the most severe pain.  R. 245. Claimant's motor ability and strength were "strong," but Claimant was slow to rise from a chair and slow to sit.  R. 245, 296.  X-rays of Claimant's back revealed no evidence of fracture, but mild degenerative disc disease and spondylosis at T11 – T12.  R. 295. Claimant was placed off work until December 25, 2005, and modified duty thereafter with: no lifting, pushing, or pulling over 10 pounds; no climbing, bending or stooping.  R. 296.  Claimant was prescribed Darvocet and Skelexan.  R. 296.

On January 6, 2006, Claimant returned to Florida Hospital stating that he still experienced sharp pain in the lower back, mainly when bending or twisting, and he was currently experiencing numbness down his legs and fingers.  R. 292.  Physical examination revealed bilateral paralumbar tightness and tenderness will pain on palpitation.  R. 293.  Claimant was

diagnosed with a low back strain and prescribed 800 milligrams of Motrin, physical therapy, and told to remain on modified work duty with the same limitations set forth above. R. 292-93. On February 22, 2006, Claimant returned stating that physical therapy helped his range of motion and strength, but he was still experiencing low back pain. R. 289-91. Claimant's prescriptions were refilled, an MRI of the lumbar spine was ordered, and Claimant remained on the above referenced modified work duty. R. 289-91. The March 8, 2006, MRI revealed disc bulging at the T11 – T12, L4 – L5, and L5 – S1, and bilateral neural encroachment at L4 – L5, right greater than left, but the MRI was otherwise unremarkable. R. 273-74. On March 21, 2006, Claimant continued to experience low back pain and numbness in his legs. R. 286. Physical examination revealed paraspinal lumbar spasms. R. 286. Claimant was continued on the same modified work duty status. R. 286.

On July 26, 2006, Claimant presented to Florida Hospital complaining of moderate low back and left leg pain, and walking with a slight limp. R. 262. Claimant's motor ability and strength were strong, but Claimant displayed reduced range of motion, muscle spasms and point tenderness. R. 262.

On August 9, 2006, Claimant presented to Florida Hospital for a follow up regarding his low back and right leg pain. R. 281. Physical examination revealed lumbar paraspinal muscle spasms, pain in both legs, and positive straight leg testing. R. 281. Muscle strength in the lower extremities was normal and sensation was intact. R. 281. Claimant was generally diagnosed with disc herniation and radiculopathy. R. 281. A new MRI was ordered, and Claimant was prescribed Flexoril and Percocet with Motrin being discontinued. R. 281. A consultation with a neurosurgeon was also recommended. R. 281. Claimant was placed off work until August 10,

2006, and thereafter on reduced work duty with the following restrictions: no lifting, pushing, or pulling over 5 pounds; no climbing, bending, or stooping; and limited standing or walking to 70 minutes.  R. 281.

The August 15, 2006 MRI revealed mild disc bulging at the L4 – L5 with bilateral facet hypertrophy.  R. 268.  There was severe impingement upon the right lateral recess at that level and mild foraminal stenosis, but no significant spinal stenosis.  R. 268-69.  A mild posterior disc bulge was also present at the L5 – S1. R. 269.  An MRI of the thoracic spine also revealed multilevel disc bulging.  R. 270-71.  The impression was that the findings were chronic in nature.  R. 269, 271.  After the MRI's described above, Florida Hospital restricted Claimant to no work status until being cleared by a neurosurgeon.  R. 277-78.  The record contains no other opinions from Florida Hospital regarding Claimant's ability to work.

On July 14, 2007, Claimant presented to Florida Hospital complaining of chronic low back pain with radiation into the right leg.  R. 345.  Claimant stated that the pain was exacerbated by sitting upright and with any movement.  R. 345.  Physical examination revealed decreased range of motion and muscle spasms.  R. 345.  Claimant was diagnosed with acute and chronic low back pain and acute sciatica pain.  R. 346.  Claimant was treated with medications and discharged.  R. 347.  On March 22, 2008, Claimant presented to the emergency room with the same symptoms which were confirmed upon physical examination with the same diagnosis.  R. 357-58. On March 14, 2009, Claimant presented with the same symptoms and was treated with a morphine injection.  R. 388-90.

2.  Dr. Alexander C. Jungreis – June 26, 2006.

Dr. Jungreis, a consultative examining physician, conducted an independent medical

evaluation of Claimant.  R. 253-57.  Claimant reported that he was still experiencing persistent pain from his injury.  R. 253.  Claimant described his back pain as above and below his belt line and radiating into his buttocks, left greater than right.  R. 253.  "He describes the pain as a sharp – type pain, as well as burning in nature, which is more or less constant and unchanged."  R. 253. Claimant also reported occasional weakness and numbness in the legs.  R. 253.  Claimant stated that the pain is normally 4 to 5 on a scale of 1 to 10, and rises to the level of 7 at times.  R. 253.

Physical examination revealed no motor, strength or sensory deficiencies.  R. 254. Claimant's musculoskeletal examination revealed:

> [H]e is able to toe walk and heel walk without too much problem.
> He was able to flex to just above the ankles without too much
> difficulty, but he could not extend back beyond neutral.  Point
> tenderness was noted, as well as dullness to percussions at L3, L4,
> and L5.  Left SI joint tenderness was also noted.

R. 255.  Dr. Jungreis also reviewed the March 8, 2006 MRI.  R. 255.  Dr. Jungreis diagnosed Claimant with lumbar spondylosis, degenerative disc disease, and chronic pain.  R. 255.  Dr. Jungreis recommended facet injections, physical therapy, and medications.  R. 255.  Dr. Jungreis assumed that Claimant would reach maximum medical improvement within 90 days, and opined that Claimant's current work status "would remain limited at 15 pounds."  R. 255.

3.   Dr. Frank S. Alvarez  – September 19, 2006 through February 6, 2007.

Dr. Alvarez, a neurologist, treated Claimant on three occasions from September 19, 2006 through February 6, 2007.  R. 307-16.  On September 19, 2006, Dr. Alvarez's notes state that Claimant was referred by Florida Hospital to a neurosurgeon, but Florida's Workman's Compensation sent Claimant to Dr. Alvarez instead.  R. 313.  Dr. Alvarez noted that the injections recommended by Dr. Jungreis were not done.  R. 313.  Claimant stated he is in

constant pain and the use of his legs, bending, twisting, turning, walking three to four minutes, standing five minutes, or rising from a seated position aggravates his low back pain.  R. 313. Physical examination revealed reduced range of motion in the thoracic and lumbar spine producing sacral pain.  R. 315.  Claimant displayed positive straight leg testing on the left and negative on the right.  R. 315.  Claimant's lower extremity strength was "entirely normal," and toe and heel walking and sensory testing were "intact."  R. 315.  Dr. Alvarez also reviewed Dr. Jungreis's independent medical examination and both MRIs.  R. 315.

Dr. Alvarez's September 19, 2006 assessment was: lumbrosacral strain due to work related injury; left leg pain and paresthesias possibly due to nerve impingement; degenerative disc disease worse on the right; no herniated discs; and migraine headaches.  R. 315.  Dr. Alvarez suggested an Electromyogram nerve conduction study ("EMG"), a lumbar roll to help Claimant maintain lumbar lordosis, a hot gel pack, and back exercises.  R. 316.  Dr. Alvarez declined to provide the clearance requested by Florida Hospital because he is not a neurosurgeon.  R. 316.  Regarding Claimant's ability to work, Dr. Alvarez opined that "he should remain at light-duty activities not lifting over ten pounds and no excessive bending, squatting, twisting, turning, pushing, or pulling.  He should do no prolonged standing or walking. He probably needs frequent changes of position."  R. 316.  Dr. Alvarez also prescribed 50 milligrams of Lyrica three times daily.  R. 316.

On October 17, 2006, Claimant presented stating that his low back pain continues throughout the day with pressure and aching sensation with tingling up into the mid back every two days throughout the day.  R. 310.  Claimant stated that Lyrica made him drowsy, but helps his headaches.  R. 310.  Claimant reported difficulty washing dishes and playing with his son

because it aggravates his pain.  R. 310.  Strength, sensation, and toe and heel walking remained normal.  R. 310.  Straight leg testing was positive with pain.  R. 310-11.  Cervical, thoracic, and lumbar ranges of motion were decreased, but pain and guarding were only present in the thoracic and lumbar areas.  R. 311.  Dr. Alvarez reviewed the EMG study which showed no evidence of peripheral nerve lesion or radiculopathy.  R. 311.  Dr. Alvarez's assessment was lumbrosacral ligamentous strain, sedation with Lyrica, degenerative disc disease, and left leg radicular-like symptoms.  R. 311.  Dr. Alvarez discontinued Lyrica and prescribed Cymbalta.  R. 312.  Dr. Alvarez opined that Claimant could continue light-duty activities as defined in September 19, 2006 treatment note.  R. 312.

Claimant presented to Dr. Alvarez for a final time on February 6, 2007.  R. 307. Claimant reported that his low back pain was now a 9 on a scale of 1 to 10, worse on the right. R. 307.  Claimant stated that he also experiences numbness and tingling along with pain down the right leg.  R. 307.  Claimant stopped taking Cymbalta because it induced vomiting.  R. 307. Dr. Alvarez was unable to perform strength testing in Claimant's hips and right quadriceps due to "give way with the patient complaining of pain."  R. 307.  Right quadriceps strength was normal.  R. 307-08.  Toe and heel walking were also normal "without any evidence of weakness."  R. 308.  Straight leg testing on the right was positive with pain, and negative on the left.  R. 308.  Reflexes were normal.  R. 308.  Lumbar ranges of motion were limited due to pain. R. 308.  Dr. Alvarez's assessment was chronic low back pain.  R. 308.  Dr. Alvarez opined that Claimant had reached maximum medical improvement with a 3% total disability rating, and recommended that Claimant return to a pain specialist and see a neurosurgeon.  R. 308.  Dr. Alvarez stated that Claimant would continue to have ongoing symptomology and may need

further medical attention in the future, but "there is really nothing else for [him] to offer [the Claimant]." R. 309.

4.   Dr. Jonathan Waldbaum – August 29, 2007.

Dr. Waldbaum, an orthopedist, treated Claimant on one occasion. R. 353-55.[2]  Claimant complained of severe, ongoing pain in his lower back.   R. 353.   Upon physical examination, Claimant was in no acute distress, displayed severe tenderness to palpitation in the lumbar paraspinal region, and tenderness in the lower lumbar facet joints.   R. 354.   Claimant had decreased range of motion throughout the lumbar spine, and Claimant's gait was mildly antalgic. R. 354.  Straight leg testing was positive on the right, but strength, sensation, and reflexes were "intact." R. 354.  Dr. Waldbaum's impressions were: lumbar degenerative disc disease; lumbar foraminal stenosis, and lumbar radiculitis. R. 354.  Dr. Waldbaum ordered an MRI, scheduled a follow-up appointment in three weeks. R. 354.  Dr. Waldbaum did not offer an opinion as to Claimant's functional limitations or ability to work. R. 353-55.  The record contains no other records from Dr. Waldbaum.

5.   Dr. Jonathan Greenberg – April 25, 2007 through August 4, 2008.

Dr. Greenberg, a neurosurgeon, began treating Claimant sometime around April 25, 2007.[3]  On April 26, 2007, Dr. Greenberg completed a "Return to Work Activity Prescription" form from Claimant's employer. R. 374.  Dr. Greenberg opined that Claimant could lift between 5 to 10 pounds and could perform only sedentary work with the following restrictions: no

---

[2] It is unclear from the record whether Dr. Waldbaum was a treating physician or a one-time consulting physician. R. 353-55.  Dr. Waldbaum's treatment notes reflect that Claimant was unclear about why he was presenting to Dr. Waldbaum, which would suggest a consultative examination, but Dr. Waldbaum also ordered an MRI and stated he would consider whether epidural injections are appropriate for Claimant after further diagnostic testing was performed.  *Id*.

[3] It is unclear from the record when the treating relationship began because it appears some of the treatment notes are missing.  For example, on August 31, 2007, Dr. Greenberg's treatment notes state that Claimant was last treated on April 25, 2007, but the record does not contain an April 25, 2007 treatment note.  R. 373.

overhead reaching, no above the shoulder work, no squatting, no bending, no stooping, no twisting, no ladder work, and no pushing or pulling.  R. 374.  On the form, Dr. Greenberg stated that he could not anticipate when Claimant would be capable of returning to regular work duty. R. 374.

On or about July 26, 2007, Dr. Greenberg completed another "Return to Work Activity Prescription" form and a "Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form."  R.  375-77.   Dr. Greenberg diagnosed Claimant with bilateral L4 – L5 traumatic facet arthropathy with lumbar radiculopathy.  R. 375-76.  Dr. Greenberg opined that Claimant was limited to maximum lifting and carrying of 10 pounds.  R. 375, 377.  Dr. Greenberg stated that Claimant could: rarely bend and reach overhead; never climb, kneel, or squat; occasionally lift less than 10 pounds from the waist overhead, stand, and walk; and frequently sit with breaks every thirty minutes as needed.  R. 377.  Dr. Greenberg opined that if conservative treatment fails, then facet blocks and/or epidural steroid injections may be appropriate.  R. 376.

On August 31, 2007, Claimant presented to Dr. Greenberg complaining of persistent hip and leg pain which was worse on the right side.  R. 373.  Claimant reported that he "did not get his treatment as recommended."  R. 373.  Physical examination revealed that Claimant "remains ambulatory and moves all extremities well."  R. 373.  Dr. Greenberg's impression was L4 – L5 post traumatic facet arthropathy with lumbrosacral radiculopathy.  R. 373.  Dr. Greenberg recommended another MRI, prescribed Tylenol #3 and restricted Claimant to sedentary duty with no lifting over five pounds, repetitive bending or prolonged sitting.  R. 372-373.   On November 30, 2007, Dr. Greenberg completed a state "Application for Disabled Person Parking

-10-

Permit," which stated that Claimant was unable to walk without the use of an assistive device. R. 368.

On November 30, 2007, Claimant presented to Dr. Greenberg stating that the pain goes up his back and neck, and down into the right leg. R. 371. Dr. Greenberg's handwritten notes state that Claimant had a full range of motion in his cervical spine. Dr. Greenberg's impression was facet arthropathy and degenerative disc disease. R. 371. Dr. Greenberg limited Claimant to lifting less than five pounds. R. 371.

On December 12, 2007, an MRI of Claimant's cervical, thoracic, and lumbar spine was performed. R. 379-84. The MRI of the cervical spine revealed loss of disc hydration at most levels, disc bulging at C3 – C4, C5 – C6, C6 – C7, and narrowing neural foramina at most levels. R. 380. The MRI of the thoracic spine revealed loss of disc hydration at most levels, but no herniated nucleus pulposus ("HNP") or significant central spinal canal stenosis. R. 381. The MRI of lumbar spine revealed the following at the L4 – L5 level:

> Loss of disc height and hydration with disc bulge and spondylosis indenting anterior thecal sac. Right posterolateral focal HNP in combination with facet arthropathy narrows the right neural foramen. Facet arthropathy in combination with posterolateral disc bulge narros left neural foramen. Right posterolateral disc herniation is best demonstrated in the present exam.

R. 382. Facet arthropathy was also noted at the L5 – S1 level. R. 384. Thus, the December 12, 2007 MRI demonstrated facet arthropathy and an HNP at the L4 – L5 level. R. 383.

On April 25, 2008, Claimant presented to Dr. Greenberg complaining of lower back, mid-back, and right lower extremity pain. R. 367. Dr. Greenberg's handwritten treatment notes state that Claimant's diagnosis was L4 – L5 facet arthropathy with right lower extremity radiculopathy, and lumbago. R. 367. Dr. Greenberg opined that Claimant was "off work status,"

and temporarily totally disabled.  R. 367.

On August 4, 2008, Claimant presented to Dr. Greenberg with the same symptoms and an antalgic gait.  R. 365.  Dr. Greenberg noted that Claimant's condition was chronic and his opinions as to Claimant's work status were the same.  R. 365.  Dr. Greenberg also completed another "Application for Disabled Person Parking Permit," which stated that Claimant has a "severe limitation in . . . ability to walk due to an arthritic, neurological, or orthopedic condition."  R. 366.  There are no other treatment notes from Dr. Greenberg in the record.

            6.  Dr. Greg Munson – May 16, 2008.

Dr. Munson completed a consultative, independent medical examination of Claimant.  R. 360-64.   Claimant reported that he is limited to walking about a block, sitting for 10 to 12 minutes before having to change positions, and he cannot bend because of back pain.  R. 360-61.  Physical examination revealed ambulation with a "distinct antalgic gait."  R. 361.  Claimant used a cane for ambulation.  R. 361. Claimant displayed a full range of motion in the cervical spine, but limited range of motion in the lumbar spine.  R. 361.  Claimant was unable to toe and heel walk, "presumably due to pain."  R. 361.  Reflexes and sensation were normal.  R. 361.  Straight leg testing was "mildly positive" on the right.  R. 361.

Dr. Munson reviewed the results of an MRI dated December 12, 2007, stating:

> The MRI of the cervical spine reveals some mild desiccation and mild bulging of multiple cervical discs.  I do not see any nerve root compression or significant foraminal compromise or nerve root compressive pathology.  The thoracic MRI is unremarkable.  The lumbar MRI reveals mild desiccation at L4 – L5 and minimal disc bulging, no significant compressive pathology.  He has mild facet arthropathy that is degenerative facet joints with some effusion in the facet joints.  I do not see any significant nerve root compromise.

R. 362 (emphasis added).   Dr. Munson also states that the December 12, 2007 MRI "suggested a

focal herniation at the L4-5." R. 363 (emphasis added).

Dr. Munson offered the following assessment:

> [C]laimant has mild early degenerative lumbar disc disease
> appropriate for age.  It appears to me that he had some chronic
> degenerative change of his facet joints, the onset of which certainly
> pre-existed his injury.  I believe that it is possible that he may have
> exacerbated some inflammation related to the degenerative
> changes.  As to whether there was an injury of a permanent
> structural nature, I do not see that. . . . As far as his lower back is
> concerned, his symptoms have vacillated in terms of which leg is
> bothering him.  His visits in September, 2006 to the neurologist
> suggested left leg symptoms repeatedly rather than right.  His
> symptoms now seem to be right leg pain per his pain diagram
> today with pain up and down his back and down the back of his
> right leg.  For this reason, I do not feel that this migrating pain
> would be likely produced by his initial injury.  I would agree with
> Dr. Alvarez's assessment that based on some exacerbation of
> inflammation that his impairment rating would haven 3% of the
> body as a whole and I would agree that he would have reached
> [maximum medical improvement] as of that visit.   I see no
> structural contraindication to employment.    I feel that his
> symptoms are in excess of what I can explain.  I do not feel that he
> has surgical indications.  I do feel that it would be unlikely that
> surgery would provide him improvement unless there was a high
> correlation of symptomatic relief with facet anesthetic injections or
> selective nerve root blocks.  I believe that he should be treated
> conservatively.  I believe that functional capacity evaluation might
> be of some benefit in finding what he is able to do or not to do at
> this stage.

R. 363-64.   Thus, although Dr. Munson did not offer an opinion as to Claimant's functional

limitations, he did opine that: there was no permanent structural injury; Claimant had only mild

lumbar degenerative changes which were appropriate for his age; he saw no structural problems

precluding employment; Claimant's whole body impairment was 3%; Claimant's symptoms

were in excess of what Dr. Munson could explain; and Claimant should be treated

conservatively, rather than surgically.  R. 364.

       7.  Dr. Alvan Barber – March 23, 2009.

On March 23, 2009, Claimant presented to Dr. Barber for a consultative examination.  R. 392-405.   Dr. Barber's notes state that Claimant was a poor historian regarding his medical history.  R. 392.  Claimant stated that he experiences lower and upper back pain which radiates into his neck and down his right leg.  R. 392.  Claimant reported that he can walk 15 minutes with a cane, stand for 10 minutes with a cane, sit 10 minutes and lift 10 to 15 pounds.  R. 393. Physical examination of lower extremities showed normal strength and sensations, but positive bilateral straight leg testing.  R. 395.  Claimant walked with a "slow guarded gait with right limp," Claimant was unable to walk on his toes or heels, and he was unable to squat.  R. 396. Dr. Barber's impressions were: lumbar trauma, degenerative disc disease, and obesity. R. 396.

Dr. Barber also completed a "Medical Source Statement of Ability to Do Work Related Activities (Physical)."  R. 400-05.  Dr. Barber opined that Claimant could frequently lift and carry 20 pounds and occasionally lift 50 pounds.  R. 400.  Dr. Barber stated that Claimant could sit for 8 hours in an 8-hour work day and stand and walk for 3 hours in an 8-hour work day.  R. 401.  Dr. Barber asserted that Claimant requires a cane for ambulation and Claimant could only walk 20 feet without a cane.   R. 401.  Dr. Barber opined that Claimant had no limitations in the ability to reach overhead, handle, finger, or feel.  R. 402.  Dr. Barber stated that Claimant could use foot controls occasionally with the right foot and frequently with the left foot.  R. 402.  Dr. Barber asserted that Claimant could never climb ladders or crawl, and could occasionally climb stairs, balance, stoop, kneel, and crouch.  R. 403.  Dr. Barber opined that Claimant could never be exposed to unprotected heights, extreme cold or heat, but could occasionally be exposed to

moving mechanical parts, operation of motor vehicles, humidity, dust and fumes, and vibrations. R. 404.  Finally, Dr. Barber opined that Claimant could never walk a block at a reasonable pace on rough or uneven surfaces.  R. 405.

       8.   Non-Examining RFCs.

Two non-examining, consulting physicians also provided opinions regarding Claimant's residual functional capacity ("RFC") based upon a records review.  R. 299-306, 317-24.   On September 26, 2006, Dr. Leticia Ortiz provided an RFC based upon a review of the medical record to date.  R. 299-306.  Dr. Ortiz opined that Claimant could: occasionally lift 20 pounds and frequently lift 10 pounds; stand and or walk about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push or pull without limitation.  R. 300.  Dr. Ortiz opined that Claimant was unlimited in terms of posture, manipulation, vision, communication, and environmental hazards.  R. 301-03.   Dr. Ortiz stated that Claimant's subjective symptoms were partially credible. R. 304.

On February 26, 2007, Dr. Violet Acero Stone provided an RFC based upon a review of the medical records.  R. 317-24.  Dr. Stone found that Claimant had a primary diagnosis of lumbar and cervical strain, and a secondary diagnosis of thoracic and lumbar disc bulges.  R. 317.  Dr. Stone opined that Claimant could: occasionally lift twenty 20 pounds and frequently lift 10 pounds; stand and or walk for about 6 hours in an 8-hour work; sit for about 6 hours in an 8-hour workday; and push or pull without limitation.  R. 318.  Dr. Stone opined that Claimant could occasionally kneel and crouch, but was otherwise unlimited in terms of posture.  R. 319.  Dr. Stone found no manipulative, visual, communicative, or environmental limitations.  R. 319-21.  Dr. Stone opined that Claimant's "allegations [are] consistent with findings," but Claimant

"has no significant neurodeficit."  R. 322.

## III.   ALJ'S DECISION.

On June 17, 2009, the ALJ issued a decision finding Claimant not disabled.  R. 17-27.

The ALJ found that Claimant retained the residual functional capacity (the "RFC") to perform

"light work," stating:

> The [C]laimant requires a cane to ambulate.  He can never climb
> ladders, ropes and scaffolding or crawl.  The [C]laimant has
> occasional postural limitations with other climbing, balancing,
> stooping, kneeling, and crouching. The [C]laimant needs to avoid
> all exposure to extreme heat, extreme cold and hazards.  He also
> needs to avoid concentrated exposure to humidity.

R. 21.  Thus, the ALJ determined that Claimant retains the RFC for a reduced range of light

work.  R. 21. The ALJ formed the above RFC based upon a thorough review of the medical

record.  *See* R. 21-25.

Regarding the various medical opinions in the record, the ALJ stated the following:

> Two state agency physicians had the opportunity to review the
> medical evidence and opined that the [C]laimant could sit, stand,
> and walk six hours in an eight-hour workday and lift twenty
> pounds.   The [C]laimant would have occasional postural
> limitations in stooping and crouching.  By contrast the physician[s]
> at [Florida Hosptial] limited the [C]laimant to lifting 5 pounds.  Dr.
> Greenberg placed the [C]laimant on a no work status.  Dr. Barber
> limited the [C]laimant to standing and walking three hours in an
> eight-hour workday and lifting ten pounds.

> The [C]laimant does suffer from degenerative disc disease of the
> lumbar spine.  However, the clinical findings only show decreased
> range of motion and tenderness.  The [C]laimant does require a
> cane due to his mildly antalgic gait.  At times, he does experience
> muscle spasms, but not on all examinations.  The evidence shows
> normal motor strength of 5/5 in all extremities, normal reflexes and
> no sensory deficits.  His grip strength is 5/5.   Dr. Jungreis opined
> he could lift 15 pounds and Dr. Alvarez opined the [C]laimant
> could perform light duty with lifting 10 pounds.  Dr. Munson, an

orthopedist, indicated after thoroughly reviewing all the medical evidence that the [C]laimant's degenerative disc disease and facet degenerative changes were only mild and even stated it was age appropriate.    He found no structural contraindication to employment.

The undersigned accords little weight to the physicians at [Florida Hospital] and Dr. Greenberg's opinion that he cannot work at all. The undersigned partially agrees with the opinion of Dr. Barber that the [C]laimant has no limitations in sitting and could lift ten pounds frequently.   However, based upon the overall objective medical evidence of only minimal findings concerning his back and no other impairments, The [sic] undersigned agrees with the state agency physician[s] and Dr. Munson's opinion that there was no structural contraindication to employment as he could sit, stand, and walk six hours in an eight hour workday, occasionally lift 20 pounds and frequently lift 10 pounds.  The undersigned also finds that the [C]laimant does need to use a cane when ambulating far distances and on uneven terrain.   In conclusion, the [C]laimant could perform well at the light exertional level with occasional postural and environmental restrictions.

R. 25.  Thus, the ALJ stated that he "agrees with" the opinions of the non-examining state agency physicians and Dr. Munson that Claimant has "no structural contraindications to employment as he could sit, stand, and walk six hour in an eight hour workday, occasionally lift 20 pounds and frequently lift 10 pounds." R. 25.  The ALJ also stated that he "partially agrees" with Dr. Barber's opinion that Claimant has no limitation in sitting and could lift 10 pounds.  R. 25.  The ALJ assigned "little weight" to Claimant's treating physicians at Florida Hospital and Dr. Greenberg.  R. 25.

**IV.   ISSUES.**

As set forth above, Claimant raises four issues on appeal, whether: 1) the ALJ erred by failing to properly consider and weigh the opinion evidence, including failing to provide good cause for rejecting the opinions of Claimant's treating physicians at Florida Hospital and Dr.

Greenberg, and failing to state the weight given to the opinions of Drs. Jungreis and Alvarez (Doc. No. 12 at 11-15); 2) the ALJ erred by failing to inquire of the VE whether her testimony conflicted with the DOT (Doc. No. 12 at 15-17); 3) the ALJ erred by failing to consider the side-effects of Claimant's medications (Doc. No. 12 at 17-18); and 4) the ALJ erred by failing to find Claimant's subjective statements credible (Doc. No. 12 at 18-19).   *Id.*   Claimant requests a remand for an award of benefits or, alternatively, a remand for further consideration.  Doc. No. 12 at 19.

The Commissioner maintains that the final decision is supported by substantial evidence. Doc. No. 13 at 4.  The Commissioner asserts that the ALJ properly considered and weighed the medical opinions of record.  R. 13 at 4-11.  The Commissioner states: "Although the ALJ did not explicitly state in his decisions that he was rejecting the opinions of Drs. Jungreis, Alvarez, and Greenberg, the rejection was apparent as the ALJ discussed the opinions, noted inconsistencies between the opinions and other record evidence, and then declined to adopt the opinions in his RFC assessment"  Doc. No. 13 at 5-6.   More specifically, the Commissioner states that "the ALJ relied on examining physicians [Drs.] Munson . . . and . . . Barber when rejecting the opinions of Drs. Jungreis, Alvarez, and Greenberg."  Doc. No. 13 at 6 (citing R. 25).[4]

As to the other issues Claimant raises, the Commissioner maintains that: the ALJ properly inquired of the VE as to whether her testimony conflicted with the DOT (Doc. No. 13 at 12-13 (citing R. 41)); the ALJ finding that Claimant does not suffer significant side-effects is supported by substantial evidence (Doc. No. 13 at 14-16) (citing R. 24)); and the ALJ's

_____

[4] The Commissioner also maintains that the Claimant "makes no argument regarding the propriety of the ALJ's rejection of the opinions of Dr. Jungreis, Alvares, and Greenberg."  Doc. No. 13 at 8.  This assertion is not supported by a fair reading of Claimant's brief.  *See* Doc. No. 12 at 12-13 (discussing how an ALJ must demonstrate good cause to reject the opinions of a treating physician).

credibility determination is supported by substantial evidence (Doc. No. 13 at 16-18).  *Id.*  Thus, the Commissioner requests that the final decision be affirmed. Doc. No. 13 at 18.

**V.      LEGAL STANDARDS.**

**A.     THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

**B.      THE STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.   REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*,

21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow

ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5]

## VI.   <u>ANALYSIS.</u>

Claimant maintains that the ALJ failed to properly weigh and consider the opinion evidence by failing to provide good cause for rejecting the opinions of Claimant's treating physicians and for failing to state the weight given to the opinions of Drs. Jungreis and Alvarez. Doc. No. 12 at 11-15.   As set forth above, the Commissioner argues that ALJ properly considered, weighed and, in the case of Claimant's treating physicians, rejected the medical opinion evidence.  Doc. No. 13 at 4-11.

This case presents "the not uncommon situation of conflicting medical evidence." *Richardson v. Perales*, 402 U.S. 389, 399 (1971).  Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).   After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).[6]  "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269.   Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

_____

[6] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

While the opinion of a one-time examining physician may not be entitled to deference, especially when it contradicts the opinion of a treating physician, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians). The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

In this case, numerous treating, consulting, and non-examining physicians offered conflicting medical opinions. *See* R. 253-7, 281, 286, 292-93, 295-96, 299-306, 307-16, 317-24, 353-55, 359-64, 365-87, 392-406. Claimant's primary treating physicians, the physicians at Florida Hospital, Dr. Greenberg, and Dr. Alvarez, each had somewhat differing opinions. The emergency room physician's at Florida Hospital treated Claimant directly following his accident, and sporadically thereafter when he would present to the emergency room with high levels of pain. R. 244-52, 258-67, 275-98, 343-52, 356-58, 388-91, 407-22. They periodically placed Claimant on temporary no work status and then modified work status with no lifting or carrying over ten pounds until August 9, 2006, when they restricted Claimant to lifting and carrying no more than 5 pound with limited standing and walking to 70 minutes. R. 281, 286, 296. On August 15, 2006, after Claimant's second MRI, the physicians at Florida Hospital placed Claimant on no work status until he was cleared by a neurosurgeon. R. 277-78.

On September 19, 2006, Dr. Alvarez opined that Claimant "should remain at light-duty activities not lifting over ten pounds and no excessive bending, squatting, twisting, turning,

pushing or pulling," with "no prolonged standing or walking."  R. 316.  Dr. Alvarez, as a neurologist and not a neurosurgeon, refused to clear Claimant to return to work.  R. 316.    On February 6, 2007, Dr. Alvarez opined that Claimant had reached maximum medical improvement with a 3% total disability rating and stated that Claimant would continue to have ongoing symptomology.  R. 308-09.

Dr. Greenberg, a neurosurgeon, treated Claimant from April 25, 2007 through August 4, 2008.  R. 365-87.  Dr. Greenberg opined that Claimant required a cane for ambulation and could not walk more than twenty feet without a cane for support.  R. 375-77.  Dr. Greenberg also opined that Claimant was limited to lifting a maximum of 5 to 10 pounds.  R. 368, 372-73, 374-75, 377.  However, by November 30, 2007, Dr. Greenberg opined that Claimant was restricted to lifting no more than 5 pounds, and on April 25, 2008, Dr. Greenberg opined that Claimant was on "off work status," and temporarily totally disabled.  R. 367, 371.  On August 4, 2008, Dr. Greenberg opined that Claimant's symptoms were chronic in nature and that Claimant was still temporarily totally disabled.  R. 366.

The one-time examining, consultative physicians also offered somewhat divergent opinions.   Dr. Jungreis examined Claimant on June 26, 2006, some two months before Claimant's onset of disability date.  R. 253-57.  Dr. Jungreis opined that Claimant was restricted to lifting 15 pounds and should reach maximum medical improvement within 90 days.  R. 255.  On May 16, 2008, Dr. Munson examined Claimant and reviewed the medical records to date, including the latest MRI from December of 2007.  R. 360-64.  Dr. Munson opined that Claimant had "no structural contraindication to employment," but although he recommended one, Dr. Munson did not provide a specific functional-by-function evaluation.  R. 365-64. On March 23,

2009, Dr. Barber opined that Claimant could lift and carry 20 pounds frequently and 50 pounds occasionally, which is far greater than any other treating, examining, or non-examining physician opined.  R. 395.  Dr. Barber stated that Claimant did require a cane for ambulation and could only stand or walk for 3 hours in an 8-hour workday.  R. 401.  Dr. Barber further opined that Claimant could never climb ladders or crawl, but he could occasionally climb stairs, balance, stoop, kneel, and crouch.  R. 403.  Dr. Barber also opined that Claimant could never be exposed to unprotected heights, extreme cold or heat.  R. 404.

The opinions of the two non-examining state agency consultants also conflict somewhat with each other.  R. 299-306, 317-24.  Dr. Ortiz, whose RFC was provided approximately one month after Claimant's onset of disability date, opined that Claimant had no postural limitations and could sit, stand, and or walk for 6 hours in an 8-hour workday.  R. 300-01.  Dr. Stone opined that Claimant was occasionally limited in the ability to kneel and crouch, but was otherwise unlimited in terms of posture.  Neither non-examining physician opined that Claimant had any environmental limitations.  R. 303, 321.

1. Failed to State Weight.

The ALJ provided a comprehensive review of the medical record and the opinion evidence.  *See* R. 21-25.  However, the ALJ did not state with particularity what weight was given to the opinions of Drs. Jungreis and Alvarez.  R. 25.  While Dr. Jungreis' opinion does not directly contradict the ALJ's RFC for a reduced range of light work, Dr. Alvarez opined that Claimant was limited to no prolonged standing or walking.  R. 316.  Without stating what weight was given to Dr. Alvarez's opinion, and the reasons therefor, the Court cannot determine whether the ultimate decision is supported by substantial evidence.

The ALJ also stated that he "partially agrees" with Dr. Barber's opinion that the Claimant has no limitation in sitting and could lift 10 pounds frequently.  R. 25.  Thus, the ALJ gave some weight to some of Dr. Barber's opinions, but the ALJ did not state with particularity the reasons therefor or what weight was given to Dr. Barber's other opinions.  It is recommended that this error warrants reversal.  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

2.  Good Cause.

The ALJ gave little weight to the opinions of Claimant's treating physicians at Florida Hospital and Dr. Greenberg.  R. 25.  However, the ALJ failed to clearly articulate the reasons for giving little weight to those opinions.  R. 25.  The ALJ did note that their opinions were in "contrast" to the opinions of the non-examining state agency physicians, but "[t]he opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician."  *Johnson*, 138 Fed.Appx. at 269.  The Commissioner argues that the ALJ appropriately identified inconsistencies between the opinions of the treating physicians and the other record evidence, and that the ALJ relied upon the opinions of Dr. Munson and Dr. Barber when rejecting the opinions of Dr. Greenberg.  Doc. No. 13 at 6-9.  While the Court agrees that the ALJ provided an exhaustive review of the medical record and opinion evidence, it is recommended the Court find that the ALJ failed to clearly articulate reasons which establish good cause to reject the opinions of Claimant's treating physicians.

3.  Substantial Evidence.

In this case, the ALJ stated that he "agrees with" the opinions of the non-examining state

agency physicians and Dr. Munson that Claimant has "no structural contraindications to employment as he could sit, stand, and walk six hours in an eight hour workday, occasionally lift 20 pounds and frequently lift 10 pounds." R. 25. A fair reading of the ALJ's statement that he "agrees with" the opinions of Dr. Munson and the non-examining state agency consultants leads the Court to conclude that he gave their opinions significant or the greatest weight. Dr. Munson did not provide a function-by-function opinion as to Claimant's functional limitations. *See* R. 360-64. Therefore, the functional limitations that the ALJ gave the greatest weight to above are those of the non-examining state agency physicians. R. 25. The ALJ's decision to give significant weight to the opinions of the non-examining physicians is problematic because those opinions do not constitute substantial evidence when standing alone. *Spencer*, 765 F.2d at 1094. Thus, it is recommended that the final decision is not supported by substantial evidence.

**VII.   REMEDIES.**

While Claimant requests a reversal for an award of benefits, based on this record, it is recommended that the cumulative effect of the evidence does not establish disability without any doubt and Claimant has not demonstrated that Claimant has suffered an injustice. *See Davis*, 985 F.2d at 534 (award of benefits appropriate where evidence establishes disability beyond a doubt); *Walden*, 672 F.2d at 840 (award of benefits appropriate where Claimant has suffered an injustice). The Court has also considered whether the ALJ's error is harmless, but concludes that in order to reach that conclusion the Court would be left in a situation where it would have to impermissibly reweigh the evidence and draw its own conclusions as to the appropriate weight to accord the medical opinions. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (a reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment

-28-

for that of the Commissioner.").

VIII.   **CONCLUSION.**

       For the reasons stated above, it is **RECOMMENDED** that:

1.   The final decision of the Commissioner be **REVERSED** pursuant to sentence four of Section 405(g) because: the ALJ failed to state with particularity the weight given to the opinions of Drs. Jungreis, Alvarez, and Barber; the ALJ failed to demonstrate good cause to reject Dr. Greenberg's opinion; and the final decision is not supported by substantial evidence;

2.   The case be **REMANDED** for further proceedings; and

3.   The Clerk be directed to enter judgment in favor of Claimant and to close the case.

       Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

       Recommended in Orlando, Florida on June 13, 2011.


                             _____

                                   GREGORY J. KELLY
                     UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate, Esq.
Law Office of Shea Fugate
P.O. Box 940989
Maitland, FL 32794


John F. Rudy, III

U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Robert D. Marcinkowski
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505
Orlando, FL 32817-9801